UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
STEPHEN DONNELLY,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
---------------------------------------------------------------------X

For Online Publication Only

FILED
CLERK
9/23/2026 11:15 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
24-cv-05552 (JMA) (SIL)

**AZRACK, United States District Judge:**

Before the Court is an appeal brought pursuant to the Social Security Act, 42 U.S.C. §§ 405 et seq. (the "SSA"). Plaintiff Stephen Donnelly challenges final determinations by the Commissioner of the Social Security Administration (the "Commissioner") that he is ineligible to receive Social Security disability insurance benefits. (See Compl., ECF No. 1.) Presently before the Court are the parties' cross-motions, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings. (ECF Nos. 13 & 14.) Upon consideration of the administrative record and the reasons set forth herein, the Court GRANTS Defendant's motion for judgment on the pleadings and DENIES Plaintiff's motion for judgment on the pleadings.

## I. BACKGROUND

The Court assumes the parties' familiarity with this matter and summarizes the relevant facts and history based on the record on appeal and the parties' instant motion papers.

On February 18, 2022 Plaintiff filed a Title TII application for disability insurance benefits and a Title XVI application for supplemental social security income, alleging a disability onset date of March 30, 2021 due to stroke, seizures, meningioma, diabetes, neuropathy in the fingers

and toes, and mixed hyperlipidemia. (Tr. 10, 16) He was 51 years old as of the disability onset date. (Tr. 21.)

The Social Security Administration denied Plaintiff's applications initially on August 12, 2022, and again upon reconsideration on January 12, 2023. (Tr. 10.) Subsequently, Plaintiff requested a hearing. (Id.) On August 18, 2023, Administrative Law Judge Deirdre Horton ("ALJ Horton") conducted an administrative hearing via telephone, at which Plaintiff was represented by counsel. (Id.) An impartial vocational expert also appeared at the hearing. (Id.) On September 14, 2023, ALJ Horton found that Plaintiff was not disabled within the meaning of the SSA. (Tr. 10–23.) On June 4, 2024, the Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1–3.) The ALJ's decision is the final decision of the Commissioner, subject to review by this Court under 42 U.S.C. § 405(g). (Tr. 1, 3.)

On August 8, 2024, Plaintiff appealed the Commissioner's final decision by filing the instant suit. (See Compl.) Currently pending are both parties' motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 13 ("Pl. Mot."); ECF No. 14 ("Def. Mot.").)

## II. LEGAL STANDARDS

### A. Standard of Review

In reviewing a denial of disability benefits by the Social Security Administration, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-cv-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

**B. Social Security Disability Standard**

To qualify for disability benefits, an individual must be: (i) insured for disability benefits; (ii) not have attained retirement age; (iii) be a U.S. citizen or a foreign national under certain circumstances not relevant here; and (iv) have a "disability." 42 U.S.C. § 423(a)(1). The SSA defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations prescribe a five-step analysis for an ALJ to determine if a claimant is eligible for disability benefits. See 20 C.F.R. § 404.1520. The Second Circuit summarizes that analysis as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant can perform.

Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); see also Bushey v. Berryhill, 739 F. App'x 668, 671 (2d Cir. 2018). The claimant bears the burden of proof at steps one through four. At step five, the burden shifts to the Commissioner to show "that there is work in the national economy that the claimant can do[.]" Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

As Plaintiff's application for disability insurance benefits was filed after March 27, 2017, his claims are governed by the current regulations concerning the consideration of medical opinions. See Darcy v. Comm'r of Soc. Sec., No. 20-CV-4769, 2023 WL 2035945, at *2 (E.D.N.Y. Feb. 16, 2023) (citing 20 C.F.R. § 404.1520(c)). "Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight." Knief v. Comm'r of Soc. Sec., No. 20-CV-6242, 2021 WL 5449728, at *6 (S.D.N.Y. Nov. 22, 2021) (cleaned up). ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to

any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the current regulations, an ALJ "must evaluate the persuasiveness of all medical opinions in the record based on five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion." Rosario v. Comm'r of Soc. Sec., No. 21-CV-1151, 2022 WL 4593069, at *5 (S.D.N.Y. Sept. 30, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)–(5)). "Supportability and consistency are considered the most important factors in evaluating a medical opinion." Id. (citing 20 C.F.R. § 404.1520c(b)(2)). For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(2). "As part of his or her decision, the ALJ must explain how the factors of supportability and consistency were considered." Rosario, 2022 WL 4593069, at *5 (citing id. § 404.1520c(b)(2)). Generally, the ALJ may, but is not required to, explain how the other factors were considered. Id. § 404.1520c(b)(2); Rosario, 2022 WL 4593069, at *5.

## III. DISCUSSION

### A. ALJ Horton's Decision

On September 14, 2023, ALJ Horton found that Plaintiff was not disabled within the meaning of the SSA and denied Plaintiff's claims for disability insurance benefits. (Tr. 10–23.)

At steps one, two, and three of the analysis set forth above, ALJ Horton determined that Plaintiff had met the insured status requirements of the Act; had not engaged in substantial gainful activity since the alleged onset date of March 30, 2021; and had the severe, medically determinable impairments of "status post cerebrovascular accident; seizure disorder; diabetes mellitus; [and] hypertension." (Tr. 12–15.) ALJ Horton found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.)

**1. Step Four Analysis**

At the fourth step, ALJ Horton found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations: "occasional ramps/stairs; no ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no hazardous machinery and unprotected heights; no pace dependent work or belt work; frequent handling and fingering; simple, routine tasks." (Tr. 15.) ALJ Horton stated that Plaintiff's residual functional capacity "effectively limits [him] to work that is light and unskilled." (Tr. 21.) Based on this RFC, ALJ Horton determined that Plaintiff could not perform his past relevant work in toner repair and delivery or iPhone repair. (Tr. 20–21.) As detailed below, ALJ Horton's analysis at step four was based, inter alia, on the medical opinions of four physicians—Dr. Steven Samuels, Dr. Andrea Pollack, Dr. W. Wells, and Dr. Maria Herrera.

***a. Dr. Samuels's April 25, 2022 Examination***

On April 25, 2022, Plaintiff presented for a physical consultative examination with Steven Samuels, M.D. (Tr. 757–61.) Dr. Samuels reported that Plaintiff had an antalgic gait, was unable to walk on his heels and toes without difficulty, achieved 50% of a squat, had a normal stance, and was able to change and get on/off the exam table without assistance. (Tr. 758–59.) Dr. Samuels

opined that it was medically necessary for Plaintiff to use a cane. (Tr. 758.) He noted Plaintiff's medical history of diabetes, cerebrovascular accident, neuropathic pain, meningioma, sciatica with ongoing intermittent weakness, memory issues, high blood pressure, and hyperlipidemia. (Tr. 760.) He determined that Plaintiff required "[m]ild to moderate restrictions [in] prolonged walking, standing, climbing up and downstairs, bending, squatting, kneeling, twisting, turning, crawling, crouching, and engaging in strenuous physical activity" and "should avoid driving an automobile or operating heavy machinery unless cleared by his neurology team." (Tr. 760.)

ALJ Horton found Dr. Samuels's opinion to be "somewhat persuasive" due to "his examination results showing antalgic gait and inability to walk on heels and toes but no sensory deficit, 5/5 strength in all extremities, and intact hand and finger dexterity." (Tr. 19.)

***b. Dr. Pollack's November 22, 2022 Examination***

On November 22, 2022, Plaintiff presented for a neurological consultative examination with Andrea Pollack, D.O. (Tr. 887–89.) Dr. Pollack reported that Plaintiff had a normal gait and station, could walk on heels and toes without difficulty, and did not need assistance to get on/off the exam table or rise from a chair. (Tr. 888.) She noted that he used a cane but that it did not appear to be medically necessary. (Tr. 888.) She determined that he had 5/5 strength in both upper and lower proximal and distal muscles. (Tr. 888.) After noting Plaintiff's medical history of hypertension, diabetes, neuropathy, meningioma, stroke, seizures, and gout, she concluded that "he has marked restriction in lifting, carrying, pushing, pulling, and climbing. He should avoid heights, operating heavy machinery, activities which require heavy exertion, activities which may put him at risk for fall or injury." (Tr. 889.)

ALJ Horton did "not find this very persuasive[,]" concluding that "this degree of limitation is not supported by Dr. Pollack's examination" and "is inconsistent with the overall record," which shows "no recurrence of seizures or stroke symptoms," and "normal gait and strength[.]" (Tr. 20.)

*c. Dr. Wells's January 10, 2023 Review*

On January 10, 2023, on reconsideration of Plaintiff's disability claims, State agency medical consultant W. Wells, M.D. reviewed the evidentiary record and opined that Plaintiff "is limited to light work and is able to return to [Past Relevant Work] as actually performed." (Tr. 104.) He assessed that Plaintiff could occasionally lift or carry up to 20 pounds, could frequently lift or carry up to 10 pounds, could stand/walk for about 6 hours in an 8-hour work day, and could sit for about 6 hours in an 8-hour work day. (Tr. 106–07.) He further determined that Plaintiff could frequently climb ramps, stairs, ladders, ropes, scaffolds and could frequently balance, stoop, kneel, crouch, and crawl. (Tr. 107–08.) He wrote that Plaintiff should "avoid operation of machinery/heights due to history of seizure." (Tr. 109.)

ALJ Horton found Dr. Wells' conclusions to be "largely persuasive" due to their consistency with claimant's May 2023 neurology records, which "show no recurrence of seizures or stroke symptoms" and "no motor weakness, no sensory deficit, normal coordination, normal finger to nose, and normal gait[.]" (Tr. 19.)

*d. Dr. Herrera's July 18, 2023 Examination*

On July 18, 2023, Dr. Maria Herrera, M.D., physically examined Plaintiff and completed a Social Security Administration RFC questionnaire. (Tr. 1180–90.) At that visit, she diagnosed him with "vertebrogenic low back pain," pain in both knees, and "other symptoms and signs involving cognitive functions following cerebral infraction[.]" (Tr. 1187.) Dr. Herrera characterized Plaintiff has having a "temporarily total" disability and recommended that he pursue "physical therapy for back pain 2-3 times a week for a duration of 4 weeks," with a reevaluation to follow immediately thereafter. (Tr. 1190.) She assessed that he could occasionally lift and carry up to 10 pounds. (Tr. 1180.) She assessed that he could sit for 40 minutes at a time and for a total of 4 hours in an 8-hour work day and could stand or walk for 1 hour at a time and for a total of 2

hours (each) in an 8-hour work day. (Tr. 1181.) She assessed that he does not require the use of a cane. (Tr. 1181.) She assessed that he should be limited to occasional overhead reaching, fingering, feeling, pushing, and pulling and frequent other reaching and handling. (Tr. 1182.) She assessed that he should never climb ladders or scaffolds, balance, kneel, or crawl and that he should be limited to occasionally climbing stairs and ramps, stooping, and crouching. (Tr. 1183.) She also assessed that Plaintiff would miss 4–6 days of work a month due to his limitations and would require 3–4 breaks of 10 minutes each per 8-hour work day. (Tr. 1185.)

ALJ Horton found this opinion "unpersuasive" because Dr. Herrera "had seen the claimant for back pain on one occasion" and the treatment she recommended for his back pain (4 weeks of physical therapy) was "not aggressive." (Tr. 20.) ALJ Horton also noted that, while Dr. Herrera ordered an x-ray at that appointment, she did not have the x-ray results when she offered her opinion and the x-ray "ended up showing only mild pathology." (Tr. 20.) Accordingly, ALJ Horton concluded that "the degree of impairment assessed by Dr. Herrera is inconsistent with the overall record," particularly medical records dated April 27, 2021, June 29, 2021, October 26, 2021, February 28, 2022, August 29, 2022, and February 8, 2023 that reflected "a negative review of systems of back pain," (Tr. 20), records dated June 21, 2021, August 11, 2021, February 14, 2022, November 14, 2022, and May 19, 2023 that reflected "no recurrence of seizures or stroke symptoms," (Tr. 20), and records dated May 3, 2021, August 11, 2021, February 14, 2022, November 14, 2022, and May 19, 2023 that reflected "normal gait and full strength," (Tr. 20.)

After considering the above medical evidence as well as other evidence in the record, including Plaintiff's testimony, ALJ Horton concluded that Plaintiff's RFC "has been limited to a range of light work with postural limitations. Environmental limitations have been included to ensure his safety, and handling/fingering limitations have been included to specifically address his allegations of difficulty using his hands." (Tr. 18.)

### 2. Step Five Analysis

At step five, ALJ Horton concluded that Plaintiff was not disabled, as defined by the SSA, because there remain jobs available to him in the national economy. (Tr. 22.) This determination was based largely on the testimony of an impartial vocational expert (the "VE"), Courtney Clem, whose role was to opine on "the extent to which [Plaintiff's RFC] limitations erode the unskilled light occupational base[.]" (Tr. 21.) At the administrative hearing, the VE testified that someone of Plaintiff's age, education, work background, who is limited to light work with "occasional ramps and stairs," "no ladders, ropes, [or] scaffolds," "occasional balancing, stooping, kneeling, crouching, and crawling[,]" "no hazardous machinery or unprotected heights[,]" and "no pace dependent or belt work" would be able to perform representative occupations such as an inspector/hand packager, a price marker, and a garment sorter. (Tr. 60.) The VE further testified that these jobs would remain available to someone further limited to frequent fingering and handling; to simple, routine tasks; and who required a cane to ambulate. (Tr. 60–61.) The VE testified that, if the Plaintiff were limited to only occasional fingering, there would be other representative jobs available, such as laundry folder or routing clerk. (Tr. 61–62.) However, the VE testified that these jobs would be eliminated if the person were additionally limited to occasional reaching and handling. (Tr. 64.) The VE testified that employers in these jobs would tolerate up to 10% in off-task time and one day per month of absenteeism. (Tr. 62.) The VE testified that "there would be no work" if a person were limited to sitting, standing, and walking for a combined total of four hours in an eight-hour day, but was not asked about other limitations on sitting, standing, and walking. (Tr. 64.)

## B. <u>Plaintiff's Challenge</u>

Plaintiff's instant appeal challenges whether ALJ Horton's RFC determination that he is capable of light work with the above-described limitations is supported by substantial evidence.

Plaintiff argues ALJ Horton improperly discounted the opinions of Dr. Samuels, Dr. Pollack, and Dr. Herrera, which Plaintiff contends support further limitations on his capacity to work. (Pl. Mot. at 18–21.) He argues that ALJ Horton insufficiently explained her consideration of the supportability and consistency factors when assessing the persuasiveness of those opinions and that she failed to consider medical records from two hospital admissions in June 2023. (Id. at 20.) Plaintiff also argues that ALJ Horton did not properly assess his ability to sit, stand, walk, lift, and carry on a function-by-function basis. (See Pl. Mot. at 22–23.)

In opposition, the Commissioner counters that ALJ Horton's RFC determination is based on substantial evidence, that she properly explained why she discounted some of the medical opinions, and that she sufficiently articulated a function-by-function analysis. (See Def. Mot. at 21–30.)

Where, as here, a Plaintiff challenges an ALJ's RFC evaluation, the burden is on the plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. See 20 C.F.R. § 404.1512(a). Having carefully reviewed the record, the Court finds that ALJ Horton's decision properly applied the regulations and that her RFC determination is supported by substantial evidence in the record.

Plaintiff primarily argues that ALJ Horton did not sufficiently analyze the supportability and consistency of Dr. Herrera's and Dr. Pollack's opinions before finding them unpersuasive. In particular, Plaintiff argues that, in finding those doctors' opinions inconsistent with the overall record, ALJ Horton ignored medical records from June 2023 showing that Plaintiff was twice admitted to the hospital that month "after experiencing dizziness, feeling diaphoretic, lightheaded, and having tunnel vision[,]" as well as "recent back discomfort and diaphoresis." (Pl. Mot. at 12 (citing Tr. 1004, 1014).) To the contrary, ALJ Horton did address those medical records in her opinion, noting that both of Plaintiff's June 2023 hospitalizations "were tied to him being

hypotensive," and that his symptoms were addressed by discontinuing or recalibrating his blood pressure medication. (Tr. 18.) ALJ Horton thus concluded that the symptoms Plaintiff reported on those occasions were caused by his medication, not by his medically determinable impairment, and, therefore, did not support more restrictive limitations. (Tr. 18.)

The Court finds that ALJ Horton's properly considered these records, as well as all Plaintiff's other medical records, in carefully assessing the supportability and consistency of all the medical opinion evidence. ALJ Horton explained that he found Dr. Herrerra's and Dr. Pollack's opinions less persuasive based on their treatment notes and other evidence in the record reflecting Plaintiff's normal gait, full strength, and non-recurrence of stroke and seizure symptoms. (Tr. 19–20.) For the same reason, the Court rejects Plaintiff's related objection to ALJ Horton's reliance on Dr. Wells's opinion. (See Pl. Mot. at 20–21.) Although Dr. Wells did not have access to Plaintiff's June 2023 medical records at the time of his January 2023 assessment, Plaintiff has not shown that those records undermine Dr. Wells's opinion. Plaintiff has not met his burden of demonstrating more severe functional limitations than those in ALJ Horton's RFC determination. See 20 C.F.R. § 404.1512(a).

The Court also rejects Plaintiff's argument that ALJ Horton failed to conduct a function-by-function analysis. As an initial matter, an ALJ's failure to conduct a function-by-analysis does not necessarily require remand. See Cichocki v. Astrue, 729 F.3d 172, 173–74 (2d Cir. 2013). Here, ALJ Horton thoroughly explained why she was adopting or rejecting the limitations identified by each of the medical experts, referring in detail to medical records demonstrating Plaintiff's normal gait and station, his full strength, and his walking for exercise. (Tr. 17, 19–20.) Based on her review of the evidence of Plaintiff's impairments and resulting limitations, ALJ Horton concluded that Plaintiff's RFC does not preclude him from light work with specified limitations.

The Court is satisfied with ALJ Horton's review of the administrative record and finds that she reasonably resolved the evidentiary disputes in this matter, as she is empowered to do. Moreover, the Court is satisfied with ALJ Horton's determination that Plaintiff had the RFC to perform light work with limitations and, thus, that Plaintiff is not disabled within the meaning of the Act. Accordingly, the Court affirms ALJ Horton's decision and grants Defendant's cross-motion for judgment on the pleadings. See 42 U.S.C. § 405(g) (The "findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings, ECF No. 14 is GRANTED and Plaintiff's motion for judgment on the pleadings, ECF No. 13, is DENIED. The Court hereby AFFIRMS the decision of the Social Security Administration. The Clerk of Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: September 23, 2026
Central Islip, New York

/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE